---

### In re DOWD.

#### (Circuit Court, D. Colorado. December 8, 1904.)

**1. HABEAS CORPUS—ISSUANCE—JUDGMENT OF STATE COURT.**

The federal courts and judges have the power under the acts of Congress to discharge prisoners restrained of their liberty in violation of the Constitution of the United States under judgments of the state courts. Rev. St. §§ 751–755 [U. S. Comp. St. 1901, pp. 592, 593].

But the law of the land which has been established by repeated decisions of the Supreme Court is that this power should not be exercised where the judgment of the state court under which the petitioner is confined is reviewable by appeal or by writ of error; but in such cases the petitioner should be put to that remedy, save in exceptional cases, such as those in which the prisoner is confined for an act done or omitted by him under the Constitution or laws of the nation, in pursuance of its authority, or under the laws and authority of a foreign government of which he is a subject. Markuson v. Boucher, 20 Sup. Ct. 76, 175 U. S. 184, 185, 44 L. Ed. 124; Pepke v. Cronan, 15 Sup. Ct. 34, 155 U. S. 100, 39 L. Ed. 84; Reid v. Jones, 23 Sup. Ct. 89, 187 U. S. 153, 154, 47 L. Ed. 116;

---

¶ 1. Jurisdiction of federal courts in habeas corpus proceedings, see note to In re Huse, 25 C. C. A. 4.

New York v. Eno, 15 Sup. Ct. 30, 155 U. S. 89, 96, 97, 98, 39 L. Ed. 80; Baker v. Grice, 18 Sup. Ct. 323, 169 U. S. 284, 294, 42 L. Ed. 748.

2. SAME—NEITHER WANT OF JURISDICTION NOR BREVITY OF IMPRISONMENT AUTHORIZES WRIT.

Under these decisions of the Supreme Court, neither the fact that the petition shows that the state court was without any jurisdiction of the proceeding in which its judgment was rendered (New York v. Eno, 15 Sup. Ct. 30, 155 U. S. 88, 89, 90, 93, 96, 98, 39 L. Ed. 80), nor the fact that the term of the petitioner's imprisonment will expire before a hearing can be had in the ordinary course of proceedings upon the writ of error or appeal (Markuson v. Boucher, 20 Sup. Ct. 76, 175 U. S. 184, 44 L. Ed. 124), ordinarily withdraws a case from the effect of this general rule.

3. SAME—SENTENCE FOR CONTEMPT OF SUPREME COURT OF COLORADO—REVIEW BY WRIT OF ERROR.

The petition for the writ discloses the alleged facts that the prisoner is confined in jail at Denver for the violation of a writ of injunction issued by the Supreme Court of Colorado upon a complaint of the people of that state, on the relation of their Attorney General and others, for the purpose of preventing frauds in an election; that there was no statute of that state which authorized such a suit; that that court had no jurisdiction of the original suit, or of the proceedings against the prisoner for a violation of the injunction; that his confinement was in violation of the Constitution of the United States; that in the proceedings against him before the Supreme Court of Colorado he set up the right and immunity which he now claims under the Constitution of the United States, and that court decided against that right and immunity; that other citizens of Colorado have been arrested, and still others are to be arrested and tried by the Supreme Court of that state, for similar violations of the injunction; that other citizens have already been tried and sentenced; and that the Supreme Court of Colorado is proceeding in the original suit to supervise the election and to canvass the votes, in alleged violation of the laws of that state.

Held, (1) the petition shows that the judgment of the Supreme Court under which the prisoner is confined is reviewable by the Supreme Court of the United States by writ of error (Tinsley v. Anderson, 18 Sup. Ct. 805, 171 U. S. 101, 105, 43 L. Ed. 91); (2) the Supreme Court of the United States has repeatedly decided that, in a case of the character of that presented by this petition, a federal judge should deny the application for the writ; and, (3) if this question were not determined by those decisions, the character of the original suit and of the proceedings under it, the gravity of the questions they present, the fact that a decision of the Supreme Court of the United States, which may prevent confusion and conflict of opinion, may finally determine every doubtful legal question, may speedily terminate all controversy and litigation, and may authoritatively direct the action of the Supreme Court of Colorado, is available to the petitioner and to all others in a similar situation, while, even if a circuit judge should grant the writ here sought, should be of the opinion that the petitioner was restrained of his liberty in violation of the Constitution, and should discharge him, that adjudication would only determine that this particular prisoner should be discharged, would leave every other question without authoritative decision, and would introduce a conflict of opinion and tend to increase controversy and litigation —all these considerations would demonstrate the wisdom and applicability of the general rule here, rather than that this case should constitute an exception to it, and would persuade that the application for the writ should be denied, rather than that it should be granted.

4. SAME—DENIAL OF APPLICATION.

When the petition for a writ of habeas corpus shows that the petitioner is not legally entitled to it, the writ should not be issued, but the application for it should be denied, and the petition should be dismissed. Rev. St. § 755 [U. S. Comp. St. 1901, p. 593].

(Syllabus by the Court.)

Application for Writ of Habeas Corpus.

E. F. Richardson and H. V. Hawkins, for applicant.

N. C. Miller, Atty. Gen., John M. Waldron, H. J. Hersey, and Thomas Ward, Jr., for the People of the State of Colorado.

Before SANBORN, Circuit Judge.

SANBORN, Circuit Judge. Michael Dowd presents an application for a writ of habeas corpus to inquire into the cause of his confinement in jail at Denver, in the state of Colorado, as he avers, in violation of the Constitution of the United States.

The acts of Congress empower the Supreme Court, the Circuit Courts of Appeals, the Circuit and District Courts of the United States, and the several justices and judges thereof, to issue such a writ; but they prohibit its extension to a prisoner in jail, except in certain specified cases, the only one of which applicable here is a case in which the prisoner "is in custody in violation of the constitution * * * of the United States," and they provide that "the court or justice or judge to whom such application is made shall forthwith award a writ of habeas corpus, unless it appears from the petition itself that the party is not entitled thereto." Rev. St. §§ 751, 752, 753, 754, 755 [U. S. Comp. St. 1901, pp. 592, 593]. The first question, therefore, which presents itself upon the application for a writ of habeas corpus, is, does the petition itself show that the applicant is not entitled to the writ? And if this question should be answered in the affirmative, the application must be denied. Ex parte Royall, 117 U. S. 241, 251, 252, 6 Sup. Ct. 734, 29 L. Ed. 868; Ex parte Fonda, 117 U. S. 516, 6 Sup. Ct. 848, 29 L. Ed. 994; Ex parte Frederich, 149 U. S. 70, 77, 13 Sup. Ct. 793, 37 L. Ed. 653; Wood v. Brush, 140 U. S. 278, 289, 290, 11 Sup. Ct. 738, 35 L. Ed. 505; Tinsley v. Anderson, 171 U. S. 101, 105, 18 Sup. Ct. 805, 43 L. Ed. 91; Markuson v. Boucher, 175 U. S. 184, 186, 20 Sup. Ct. 76, 44 L. Ed. 124; Storti v. Massachusetts, 183 U. S. 138, 22 Sup. Ct. 72, 46 L. Ed. 120.

The alleged facts disclosed by the petition in this case which are material to the determination of this question are these: There was a general election in the city and county of Denver on November 8, 1904, for the election of presidential electors, congressmen of the United States, and state, city, and county officers. On the 5th day of November, 1904, the Supreme Court of the state of Colorado, upon a petition of the people of the state of Colorado, on the relation of N. C. Miller, Attorney General, James H. Peabody, and D. B. Fairley, against the judges of election of the Eighth Precinct of the Seventh Ward of the city of Denver, and others, issued a writ of injunction, directed to the judges of this precinct and the other respondents, whereby it commanded them, their servants, agents, employés, and all persons acting or assuming to act under their control, authority, or direction, or in collusion or confederacy with them, to refrain from preventing a free, fair, and lawful election; from excluding or preventing the judge of election appointed by Harry C. Riddle, one of the respondents, from serving as such judge in that precinct; commanded the said judges to appoint as one of the clerks of the election in this precinct the person designated by the judge appointed by Harry C. Riddle; and

commanded and forbade numerous other specific acts. · The judges of the Eighth Precinct .of the Seventh Ward on the morning of the election appointed the petitioner, Dowd, a constable.   Riddle requested the judges to appoint one Samuel Lucas as a clerk of election, and the judge of the election in this precinct appointed by Riddle requested the judges, in pursuance of the injunctive order of the Supreme Court, to appoint said Lucas as one of the clerks of the election.   But those judges appointed other clerks.   Lucas was not permitted to serve, and by the direction of the judges the petitioner, Dowd, led him out of the polling place.   Dowd was not named as a respondent in the original petition of the people of the state of Colorado.   On November 9, 1904, Ferdinand H.· Hegwer and Preston R. Childers filed a complaint with the Supreme Court of the state of Colorado, verified by oath, which charged the petitioner with violating the writ of injunction, and prayed that a writ of attachment should issue, commanding his arrest.   A warrant of attachment was issued, and the prisoner was arrested.   The cause was continued until November 16, 1904, when the petitioner filed in the Supreme Court a petition and motion that the writ of attachment be quashed, and that he be discharged, on the grounds that the Supreme Court of Colorado had no jurisdiction of the original suit for an injunction, and that the issue of the writ of attachment and his arrest and confinement were violative of the sixth and of the fourteenth amendments to the Constitution of the United States.   The motion to quash the writ and to discharge the prisoner was denied by the Supreme Court, witnesses were produced in support and in defense of the charge of a violation of the injunction, and a trial was had before that court. It found the petitioner guilty of a violation of the writ of injunction and of contempt of that court, and sentenced him to imprisonment in the jail of the city and county of Denver for the period of 60 days from the 19th day of November, 1904, and, in addition thereto, that he should pay a fine in the sum of $250, and that he should stand committed until this fine was paid.   Pursuant to this sentence, he is now confined in the common jail under a mittimus issued by the Supreme Court of the state of Colorado to the sheriff of the city and county of Denver, which commands him to enforce this sentence.   There was no statute of the state of Colorado which authorized the original suit, or any of the proceedings thereunder, and the Supreme Court of Colorado never had jurisdiction of any of them.

The petition for the writ of habeas corpus also shows that there is no remedy available to the petitioner in the courts of the state of Colorado, and that it is impossible for the petitioner to have his cause presented to the Supreme Court of the United States upon writ of error, and to have the matter determined within the period of his confinement in the common jail under the sentence imposed upon him; that his imprisonment violates the fourteenth, fourth, fifth, and sixth amendments of the Constitution of the United States; that this is a matter of the utmost urgency and importance, not only to the petitioner but to the people of the state of Colorado and of the United States, and that, in addition to the petitioner, several persons are now confined in the common jail of the city and county of Denver under commitments issued by the Supreme Court of the state of Colorado in the same cause in

which the commitment of the petitioner was issued, and upon the same or similar charges; that there are many other persons who are under arrest upon writs of attachment issued against them by order of the Supreme Court of the state of Colorado; that their trials are set and ready to be heard; that the Supreme Court of that state is daily issuing writs of attachment against other persons for like violations of the injunction; and that it has assumed exclusive jurisdiction of the general election in the city and county of Denver, and is directing the canvass of the votes, in alleged violation of the laws of the state of Colorado.

A final judgment or decree in any suit, civil or criminal, in the highest court of a state where any title, right, privilege, or immunity is claimed under the Constitution of the United States, and the decision is against the title, right, privilege, or immunity specially set up or claimed, may be re-examined and reversed or affirmed in the Supreme Court of the United States by appeal or by writ of error. Rev. St. § 709 [1 U. S. Comp. St. 1901, p. 575].

In the proceeding against him for contempt of court, the petitioner set up and claimed the right, privilege, or immunity under the Constitution of the United States upon which he now relies to secure the writ of habeas corpus, and the decision of the Supreme Court of Colorado was against that right or immunity. The Supreme Court of the United States therefore has jurisdiction to review by writ of error the judgment of conviction under which the petitioner is imprisoned. Tinsley v. Anderson, 171 U. S. 101, 105, 18 Sup. Ct. 805, 43 L. Ed. 91. And it also has jurisdiction to review it by writ of habeas corpus and by writ of certiorari, pursuant to the decision of that court in In re Watts and Sachs, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933.

Not only this, but by virtue of its appellate jurisdiction the Supreme Court of the United States has the power to issue its writ of mandamus to the Supreme Court of the state of Colorado either in aid or in the exercise of its appellate jurisdiction, and in this way to exercise a certain supervisory power over the action of that court. Livingston v. Dorgenois, 7 Cranch, 577, 588, 3 L. Ed. 444; Ex parte Bradstreet, 7 Pet. 634, 644, 8 L. Ed. 810; New York Life & Fire Ins. Co. v. Wilson, 8 Pet. 291, 303, 8 L. Ed. 949; Ex parte Roberts, 15 Wall. 384, 386, 21 L. Ed. 131; Insurance Co. v. Comstock, 16 Wall. 258, 270, 21 L. Ed. 493; Virginia v. Rives, 100 U. S. 313, 316, 323, 327, 329, 25 L. Ed. 667. A circuit judge has no such appellate or supervisory power over the proceedings of the Supreme Court of the state of Colorado, and this notable difference between the power of the Supreme Court and that of the circuit judge, as well as the radical distinction between the authority of a decision of that court and that of a decision of a circuit judge, are worthy of grave consideration here, in view of the fact that the Supreme Court of Colorado is proceeding in the exercise of a jurisdiction which it claims to have to arrest and confine other citizens of that state, and to supervise the general election. The limit of the power of the circuit judge under this petition is to discharge the prisoner, and, if that were done, the result would be a decision

of a circuit judge that the prisoner was confined in violation of the Constitution of the United States, in conflict with a decision of the Supreme Court of Colorado that he was not so confined. And while the former decision would prevail, it would not have the controlling, authoritative, and conclusive effect which, under our system of jurisprudence, a decision of the Supreme Court must have, and it would not put an end to, but would rather tend to increase, litigation and confusion.

Where a petitioner is confined in violation of the Constitution of the United States under a judgment of a state court which is reviewable by writ of error in the Supreme Court of the United States or in a higher court of the state, the issue of a writ of habeas corpus by a federal judge is not imperative, but discretionary, and, in the exercise of this discretion, the considerations to which reference has just been made are entitled to grave attention. "That discretion," says the Supreme Court, "should be exercised in the light of the relations existing under our system of government between the judicial tribunals of the Union and of the states, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution." Ex parte Royall, 117 U. S. 241, 251, 6 Sup. Ct. 734, 29 L. Ed. 868.

In exceptional cases, as where a citizen or subject of a foreign state is in custody for an act done under the authority of his own government (Wildenhus's Case, 120 U. S. 1, 7 Sup. Ct. 385, 30 L. Ed. 565), or an officer or a citizen of the United States has been arrested under state process for acts done or omitted under the Constitution or laws of the federal government, and pursuant to its authority (In re Neagle, 135 U. S. 1, 10 Sup. Ct. 658, 34 L. Ed. 55, and In re Loney, 134 U. S. 372, 10 Sup. Ct. 584, 33 L. Ed. 949), the writ has been granted and the prisoner discharged. But the general rule and the better practice is to deny the application for the writ where the petitioner may review by appeal or by writ of error the judgment under which he is confined in the Supreme Court of the United States or in a higher court of the state. "It is certainly the better practice," says Mr. Justice Jackson in In re Frederich, 149 U. S. 70, 77, 13 Sup. Ct. 793, 37 L. Ed. 653, "in cases of this kind, to put the prisoner to his remedy by writ of error from this court, under section 709 of the Revised Statutes, than to award him a writ of habeas corpus, for under proceedings by writ of error the validity of the judgment against him can be called in question, and the federal court left in a position to correct the wrong, if any, done the petitioner, and at the same time leave the state authorities in a position to deal with him thereafter within the limits of proper authority, instead of discharging him by habeas corpus proceedings, and thereby depriving the state of the opportunity of asserting further jurisdiction over his person in respect to the crime with which he is charged." Reid v. Jones, 187 U. S. 153, 154, 23 Sup. Ct. 89, 47 L. Ed. 116; Markuson v. Boucher, 175 U. S. 184, 186, 187, 20 Sup. Ct. 76, 44 L. Ed. 124; Pepke v. Cronan, 155

U. S. 100, 15 Sup. Ct. 34, 39 L. Ed. 84; Ex parte Fonda, 117 U. S. 516, 518, 6 Sup. Ct. 848, 29 L. Ed. 994; New York v. Eno, 155 U. S. 89, 96, 97, 98, 15 Sup. Ct. 30, 39 L. Ed. 80; Baker v. Grice, 169 U. S. 284, 294, 18 Sup. Ct. 323, 42 L. Ed. 748; Whitten v. Tomlinson, 160 U. S. 231, 242, 16 Sup. Ct. 297, 40 L. Ed. 406; Tinsley v. Anderson, 171 U. S. 101, 105, 18 Sup. Ct. 805, 43 L. Ed. 91; Ex parte Royall, 117 U. S. 251, 252, 6 Sup. Ct. 734, 29 L. Ed. 868; Cook v. Hart, 146 U. S. 183, 195, 13 Sup. Ct. 40, 36 L. Ed. 934; Wood v. Brush, 140 U. S. 278, 290, 11 Sup. Ct. 738, 35 L. Ed. 505; Ex parte Frederich, 149 U. S. 70, 77, 13 Sup. Ct. 793, 37 L. Ed. 653; Davis v. Burke, 179 U. S. 399, 402, 21 Sup. Ct. 210, 45 L. Ed. 249; Storti v. Massachusetts, 183 U. S. 138, 22 Sup. Ct. 72, 46 L. Ed. 120; Eaton v. State of West Virginia, 34 C. C. A. 68, 72, 91 Fed. 760, 764.

The contention of the applicant that this rule should not be applied to a case like that at bar, in which the petition shows that the state court had no jurisdiction, and that in every such case the writ should issue, cannot be sustained, because in the cases cited above in which the rule was established, and in which it has been insistently followed by the Supreme Court, whose decisions must control, the indispensable reason stated in the petition for the issue of the writ was this very want of jurisdiction in the state courts either to entertain the suit or to inflict the punishment, and because the adoption of the contention of the applicant would bring nearly all applications for writs of habeas corpus under the exceptions, and would thereby practically abrogate the rule, since the only question reviewable upon a writ of habeas corpus to inquire into the detention of a prisoner by order of a state court is the jurisdiction of that court to entertain the suit or to take the action which results in his detention. In re Debs, 158 U. S. 564, 600, 15 Sup. Ct. 900, 39 L. Ed. 1092; In re Nevitt, 54 C. C. A. 622, 117 Fed. 448. In other words, a case in which the petition for the writ shows that the state court under whose judgment the prisoner is restrained of his liberty was without any jurisdiction of the proceeding is not an exceptional, but is an ordinary, case of an application for the writ, and that showing is as frequently a characteristic of the cases which fall under the rule as it is of those which illustrate the exceptions to it.

In New York v. Eno, 155 U. S. 88, 89, 90, 96, 98, 15 Sup. Ct. 30, 39 L. Ed. 80, the petition for the writ disclosed the fact that the petitioner was restrained of his liberty by a state court which "has not and never has had jurisdiction" of the offenses charged against him, in violation of the Constitution of the United States; and yet the Supreme Court, without considering or determining whether or not the state court had jurisdiction, or whether or not the petitioner was confined in violation of the Constitution, reversed the judgment of the Circuit Court, which discharged the prisoner upon a writ of habeas corpus, because it did not follow the established rule— deny the writ of habeas corpus and put the petitioner to his review by writ of error. In Baker v. Grice, 169 U. S. 284, 18 Sup. Ct. 323, 42 L. Ed. 748, the Supreme Court reversed a discharge of the peti-

133 F.—48

tioner upon a writ of habeas corpus for the same reason, without considering or deciding the question whether or not the prisoner was detained in violation of the Constitution of the United States.

The question is not novel in this circuit. In Markuson v. Boucher, 175 U. S. 184, 20 Sup. Ct. 76, 44 L. Ed. 124, a petition for a writ of habeas corpus was presented to the United States District Court for the District of North Dakota, in which the petitioner alleged that he was confined in the State Penitentiary under a sentence of a state court of North Dakota, which had been affirmed by the Supreme Court of that state, that he should be punished by imprisonment for one year for contempt, for the violation of an injunction issued by that court under section 7605 of the Revised Codes of that state. He also averred that the statute violated the fifth, sixth, and fourteenth amendments of the Constitution of the United States, so that the court which sentenced him had no jurisdiction of the charge upon which he was convicted, and that he was in "straitened circumstances, and without means or power to prosecute a writ of error from the Supreme Court of the state to the Supreme Court of the United States, or to employ counsel to present or argue it there, and is informed and believes, if he had such means, it could not be brought on for hearing before the expiration of his sentence." The District Court refused to discharge the prisoner. In the Supreme Court the constitutional points raised and the question of the jurisdiction of the state court were argued at length, but that court refused to consider them. It affirmed the judgment below, and said:

"We have frequently pronounced against the review by habeas corpus of the judgments of the state courts in criminal cases because some right under the Constitution of the United States was alleged to have been denied the person convicted, and have repeatedly decided the proper remedy was by writ of error. * * * The jurisdiction is more delicate, the reason against its exercise stronger, when a single judge is invoked to reverse the decision of the highest court of a state in which the constitutional rights of a prisoner could have been claimed, and may be were rightly decided, or, if not rightly decided, could be reviewed and redressed by a writ of error from this court."

The case of Pepke v. Cronan, 155 U. S. 100, 15 Sup. Ct. 34, 39 L. Ed. 84, is a decision of the same character under similar facts.

These decisions of the Supreme Court leave no alternative in the case at bar to one who would not disregard the law clearly laid down by the highest judicial tribunal in the land. The case falls under the rule which that court has established, and not under the exceptions to it which it has specified. The petitioner is not in custody for an act done under the authority of the federal government or of any foreign government.

The fact that the hearing and decision of his case by the Supreme Court under a writ of error cannot be had until the term of his imprisonment will have expired has been determined in Markuson v. Boucher, 175 U. S. 184, 20 Sup. Ct. 76, 44 L. Ed. 124, to present no exception to the general rule. Any other practice would make every sentence of imprisonment for a short term by a state court, where the prisoner asserts that there was a denial of any of his rights, privileges, or immunities under the Constitution of the United States, a proper subject of examination on writ of habeas corpus by the federal judges. Moreover, the Supreme Court has the power, and, if the case presented

is of sufficient importance, it will undoubtedly exercise its power, to grant a speedy hearing and to render an early decision.

While the original suit in the Supreme Court of Colorado for the injunction, the supervision of the election, and the various proceedings therein, are of grave importance, and may demand the immediate and final decision of many important questions which are there presented, those questions cannot be finally determined in this proceeding; and the only authoritative adjudication that could be here made, if the writ were issued, would be a discharge of the prisoner, or his remand to the custody of the sheriff.

If the Supreme Court had not already repeatedly decided how the discretion of a federal judge to issue a writ of habeas corpus to question the adjudication of a state court should be exercised in an action of the character of the case at bar, the nature of the original suit in the Supreme Court of Colorado, and of the various proceedings under it, the gravity of the questions they present, the need of a speedy and conclusive determination of them, the appellate and supervisory jurisdiction of the Supreme Court over them, the fact that its decision will prevent confusion and conflict of opinion, will finally determine every legal question, and will put an end to conflict, controversy, and litigation, while an adjudication by a single judge in the case in hand that this petitioner be discharged would finally determine nothing more, but would leave every other question without authoritative decision and open to further litigation—these exceptional facts would persuade rather that the application for the writ should be denied, than that it should be granted.

There may be exceptional cases—doubtless such cases will arise—which have not been specified by the Supreme Court, in which the writ of habeas corpus should be issued by a federal judge to question the judgment of a state court, although a right of review by appeal or by writ of error may still exist. But the case at bar is so far and so clearly within the rule which the Supreme Court has laid down for our guidance in the cases of Markuson v. Boucher, 175 U. S. 184, 20 Sup. Ct. 76, 44 L. Ed. 124, Pepke v. Cronan, 155 U. S. 100, 15 Sup. Ct. 34, 39 L. Ed. 84, New York v. Eno, 155 U. S. 89, 96, 97, 15 Sup. Ct. 30, 39 L. Ed. 80, and Baker v. Grice, 169 U. S. 284, 291, 18 Sup. Ct. 323, 42 L. Ed. 748, that the application for the writ in this case cannot be granted without a flagrant disregard of that rule and of the repeated decisions of that court.

The application must accordingly be denied, and the petition for the writ must be dismissed.