## THE RIGHT OF PUBLIC TRIAL.

[Court of Common Pleas of Franklin County.]

HARRY FIELDS v. THE STATE OF OHIO.

Decided, May 14, 1906.

*Public Trial—Rules of Court in Violation of Right of—Errors not Prejudicial—But Involving a Denial of Constitutional Rights—Expert Evidence as to the Game of "Craps"—Omission of Names of Africans from Jury Wheel.*

1. A rule of court which excludes from the court room all of the world, except officers of the court, witnesses, certain relatives, newspaper men, and those having special permission from the court to enter, is in violation of the guarantee of a public trial found in Section 10 of Article I of the state Constitution.

2. The rule that errors occurring during a trial shall not be considered as ground for reversal of the resulting judgment, unless they are of such a character as to be material or prejudicial, is not applicable to an error involving the deprivation of a constitutional right; the law presumes in such a case that an injury has been suffered.

3. Expert evidence may properly be admitted in a criminal trial, where the charge is gambling by means of the game known as "craps."

4. However lightly and devoid of merit a court may regard a motion to set aside a verdict on the ground that the jury commissioners excluded from the wheel the names of all persons of the African race, such exclusion where made solely on account of race or color being a denial of the equal protection of the laws as vouchsafed in the Fourteenth Amendment, it is the duty of such court to grant a hearing on such motion.

DILLON, J.

The plaintiff in error was charged in the police court with gambling, tried before a jury, convicted and sentenced. He prosecutes error to this court.

After a demurrer had been filed and overruled to the affidavits, the cause was called for trial April 4, 1906. Before the commencement of the trial the defendant objected to the manner in which the same was about to be conducted, and continued his

objection at the conclusion of the trial, by reason of the following rules of the said police court:

"The following persons *only* shall be admitted to the lobby: 1. Officers of the police court. 2. Witnesses *under subpoena*. 3. Wife, mother, or father of prisoner, .during trial. 4. Persons having special permission from the court. 5. Newspaper men."

While the presumption is that the court enforces its own rules at its trials, and that, in the absence of a contrary showing, the same were in accordance therewith, the actual enforcement of this rule is further proven by numerous affidavits of friends of the accused who applied for admission and were refused. The plaintiff in error claims, therefore, that he was denied a public trial, in accordance with Section 10 of Article I, of the Constitution of this state. The question, therefore, is fairly presented as to whether or not the admission only of the persons limited in the rule is sufficient to grant the defendant a "public trial" within the meaning of the Constitution. By this rule it will at once be apparent that all the world was excluded from the trial except the officers of the court, the witnesses, and wife, mother, or father, newspaper men, and those persons who had special permission from the court.

My consideration of this question has led me to determine, without reserve, that this is not a public trial. Public trial is one to which any proper person may have admittance, providing there is reasonable room therefor. The rule, therefore, which excludes all the world but a certain designated few, unquestionably violates the provisions of the Constitution with respect to a public trial. The object of the rule, doubtless, is commendable, as being intended to exclude those young and tender in years, those habitues or loungers whose presence might keep out the friends of the one accused, and those who, by reason of their personal habits as to disease, cleanliness, etc., should be denied admission. Restriction of this kind, unquestionably, would be valid.

There is a dearth of decisions on the subject, for the reason, no doubt, that it has seldom happened that any restrictions have been made in this country which would permit of the question

being raised. In our own state we have one decision, that of *Kirk* v. *The State,* 14 Ohio, 511, decided in 1846. In that case, the trial itself was public, and without restriction, but after the jury retired, the presiding judge, at the jury's request, went to their room and explained his charge again to them, in the absence of defendant and his attorney. So jealous was the Supreme Court of this guaranty of the Constitution of a public trial, that the case was reversed and the cause remanded for a new trial.

In the case of *The People* v. *Murray,.* 89 Michigan, 276, that court decided, in 1891, that a public trial has not been granted the accused by reason of a rule which provided that the officer at the door of the court room should "see that the room is not over-crowded, but that all respectable citizens be admitted and have an opportunity to get in when they shall apply."

One of the reasons for so declaring this rather reasonably appearing rule to be invalid was that the persons applying were not personally known to the door-keeper and were not required to get certificates of character as to their respectability. It seems manifest, therefore, that a requirement that every one accused of crime shall have a public trial means that all the world may freely attend within the reasonable capacity of the court room, and that the only. exclusion . can be those of the classes such as I have before mentioned. To make a rule which admits simply a certain limited class and bars the whole world except those coming within that classification, is clearly a violation of this provision of our Constitution.

It is argued on behalf of the state that, as a matter of fact, the defendant had a fair, impartial trial, and that he was not prejudiced by reason of this error. I grant the contention, but I can not grant the conclusion which counsel for the state draw therefrom, that even though this error existed, there being no prejudice to the defendant in his trial, the judgment should be affirmed. It is true that generally speaking mere errors which occur at a trial should not be considered as grounds for reversing a judgment, unless those errors were such as were material and prejudicial. This court inclines to the view that sometimes our reviewing courts have lost sight of this principle and oft-

times purely on mere abstract theory, have found error and assumed too freely the duty of reversal, even though it be apparent that without such error the result of the trial would have been the same. But when one of the constitutional guaranties as to personal rights is involved, the law does not force upon the one so deprived to show that any actual injury has been suffered by him by such deprivation of his constitutional right, but on the other hand, on principle and on grounds of public policy, once it is shown that his constitutional right has been violated, the law will presume that he has suffered an injury. This public policy and principle are based upon the theory that in such a case the whole body politic suffers an injury when the constitutional safeguard enacted to protect the right of a citizen has been violated in the person of the humblest.

The second complaint made by the plaintiff in error is that expert evidence was received upon the subject of the gambling game known as "craps." Laymen who are called to serve as jurors are not presumed to be familiar with the various games of chance which are by law made unlawful, and therefore the subject is not one of such common occurrence as would preclude expert testimony. In all such cases the state has a right to call those who are familiar with such games to explain what acts are embraced in and constitute the particular game complained of. I find no error, therefore, by reason of the admission of such evidence.

The plaintiff further complains that the court erred in overruling his motion to set aside the finding and verdict for the reason that the jury commissioners had excluded from the wheeel the names of all persons of the African race, for the sole reason that they were persons of that descent. The court overruled this motion and refused to grant the defendant below an opportunity to prove his claim as made in the motion. While this motion probably was viewed by the court below as wholly without merit, and while this court is not inclined to take seriously to the claim made, it is pertinent to observe that this question has been passed upon by the Supreme Court of the United States in a number of cases in which it has held the right of a defendant to be heard as to such claim. See *Virginia* v. *Rives*, 100 U. S., 313-323;

*In re Wood,* 140 U. S., 278; also, the recent decision of the Supreme Court of the United States in the case of *Rufus Martin* v. *Texas,* decided February 13, 1906, in which the court hold that a discrimination against the negroes because of their race, in the selection of grand and petit jurors is forbidden by the Fourteenth Amendment to the Constitution of the United States, and that if one accused files his motion, and at the same time offers to prove by witnesses the truth of his claim so made, the court must hear it, and refusal to so hear the offered evidence is error. It is well settled, therefore, in this country, that whenever by any action of a state, whether made through its Legislature or through its courts, or through any of the executive or administrative officers thereof, it is made to appear that all persons of the African race are excluded from serving as jurors solely because of their race or color, the equal protection of the laws is denied contrary to the Fourteenth Amendment of the Constitution of the United States.

The judgment of the police court, therefore, is reversed, and the cause is remanded to that court with instructions to grant the plaintiff in error a new trial.

*C. D. Saviers,* for plaintiff in error.